[No. 3,944.]

# BERNARDO DUBORDIEU *v.* GEORGE R. BUTLER.

MANDAMUS TO COMPEL TREASURER TO PAY WARRANTS.—If a Board of Water Commissioners draws warrants upon the Treasurer of the city, payable out of the "Water Fund," and the fund is then derived from "water rates," but before money comes into the fund to pay them, an Act is passed by which the "Water Fund" was to be supplied, not only from such rates, but by taxation on the land supplied with water, the new "water fund" is not the one upon which the warrants were drawn, and *mandamus* will not lie to compel the Treasurer to pay them out of the same.

IDEM.—If there is an ordinance of a city prohibiting the Treasurer from paying claims against the city before they have been audited and approved by the Common Council, *mandamus* will not lie to compel him to pay such claims, until thus audited and approved.

APPEAL from the District Court, Seventeenth Judicial District, County of Los Angeles.

About the year 1784, pursuant to instructions from the Viceroy of Mexico to the Governor of California, the Pueblo de Los Angeles was created, on what is now the site of the city of Los Angeles, and was endowed with the quantity of land usually allotted to Pueblos in California. The river Los Angeles flows through the Pueblo, and the Pueblo was vested with the right, in absolute ownership, to the water flowing in the same. The Pueblo, through and by its ayuntamiento, excavated and constructed ditches, irrigating canals, zanjas and acequias for the purpose of conducting said water from the river to and upon the lands of its inhabitants, within the limits of the Pueblo, and was from the time of the construction thereof up to and until the 4th day of April, A. D. 1850, the owner in fee simple of all and each of such ditches, irrigating canals, zanjas and acequias. The Pueblo, through its ayuntamiento and officers, appropriated and used the waters of the Los Angeles river for the purposes of irrigation and domestic uses until the incorporation of the Pueblo as a city, on the 4th day of April, A. D. 1850.

On the 4th day of April, 1850, the city of Los Angeles was incorporated, and succeeded to and acquired all the

rights, claims and powers of the Pueblo de Los Angeles in regard to property, and through its officers and representatives, from the day of its incorporation until the 2d day of April, A. D. 1870, continued to appropriate and use the waters of the river in the same way and for the same purposes as the Pueblo before it had done.

The city of Los Angeles, acting by its Mayor and Common Council, from the date of its incorporation until the 2d day of April, 1870, charged to and collected from persons using the water flowing in said river and through its irrigating ditches connecting therewith, a certain water rate or tax, which being paid into the City Treasury, constituted a "Water Fund," and was disbursed by the City Treasurer upon warrants drawn on that fund for services and labor rendered in connection with the management, control and disposition of the said water.

On the 2d day of April, A. D. 1870, an Act of the Legislature of the State of California, entitled "An Act to create a Board of Water Commissioner in the City of Los Angeles, and to define their powers and duties," was approved. By this Act certain powers and duties were conferred upon the Board of Water Commissioners, among which were to raise money by sale of water, the money so raised to be paid into the hands of the City Treasurer, and there constitute a fund, to be known as the Water Fund; also to draw warrants upon that fund in the payment of certain indebtedness which they were authorized to contract. (See Acts of 1869–70, pages 702–7, inclusive.)

Under that Act, and upon that Water Fund, the warrants in question and the subject-matter of this proceeding were drawn.

After two years' experience, it was ascertained that the new arrangement did not accomplish the result hoped for, and, on the 19th day of January, 1872, the Act of April 2, 1870, creating the Board, was repealed, and the management and distribution of the water was again vested in the city. (For the repealing Act, see Acts of 1871–2, page 30.)

Subsequently, by the same Legislature, another Act entitled, "An Act to amend the charter of the City of Los

Angeles," was passed and approved, February 20, 1872. (See Acts of 1871–2, pages 128 and 129.)

By this Act, the Mayor and Common Council of the city were authorized to raise money by sale of water and a special tax upon land within the city irrigated from the said ditches, which money should be paid into the City Treasury, and should there constitute a separate fund, to be known as the "Water Fund," and was to be disbursed only as provided in said Act.

On the 1st day of April, 1871, the Board of Water Commissioners consisted of Luis B. Martinez, J. J. Warner, and Rafael L. Banchet, and there was due Felix Gallardo for services as overseer, in the construction and management of the ditches, the sum of one hundred dollars, and to one Jesus L. Cruz, for like services as overseer, one hundred dollars. On said day the said Board allowed and approved the said accounts, and drew its warrant on the defendant who was City Treasurer, of which the following is a copy:

"Mr. George R. Butler: Pay to the order of Felix Gallardo one hundred dollars, value received, and charge the same to account of the Los Angeles City Water Fund.

"Signed:          LUIS B. MARTINEZ, Chairman.
"[No. 32.]          J. J. WARNER, Secretary."

A similar warrant was drawn in favor of Cruz. The warrants were presented for payment on said day, and the Treasurer endorsed thereon "not paid for want of funds." The warrants were assigned to the plaintiff, who, on the 23th of May, 1873, again presented them to the defendant, who was still Treasurer, but he declined to pay them, alleging as a reason that the fund upon which they were drawn was no longer in existence. This was an application for a writ of mandate to compel the Treasurer to pay the warrants. The Court ordered the writ to issue, and the defendant appealed.

The other facts are stated in the opinion.

*A. W. Hutton,* for the Appellant.

The phraseology employed in sections 3 and 4 of the Act

of February 20, 1872, negatives in the strongest terms, the idea that warrants drawn by the old Board of Water Commissioners upon their water fund, (which for the payment of warrants drawn upon it, is still in existence and unrepealed,) should be paid out of this water fund, created for the purpose of allowing the city authorities to carry on the system of irrigation, so important to the city and its inhabitants, untrammeled by the large load of debts, contracted by the old Board of Commissioners. Words plainer than those employed could not well have been chosen. The fund is designated as a separate fund, the future tense is used throughout; the objects for which the money is to be disbursed are clearly defined.

The defendant is City Treasurer of the city of Los Angeles, and as such is subject to the management and control of said city authorities, and has no authority to pay out any money collected and paid to him under and in pursuance of the Act of February 20, 1872, except upon warrants signed by the President of the Common Council and countersigned by the Mayor of the city, and for the purposes enumerated and specified in said Act.

Section seven of an ordinance passed prior to April 2, 1870, reads as follows ·

"Sec. 7. All claims against the city shall first be presented to the Common Council and referred to the Finance Committee, who shall audit and examine the same, and if found to be correct, shall endorse thereon the fact; and such claim or claims shall then be passed upon by the Council; if a majority vote for their payment an order shall be drawn upon the Treasurer for such amount, and no money shall be paid by the Treasurer, out of any fund of the city, except upon an order or warrant signed by the President of the Common Council, and approved and countersigned by the Mayor."

It is a well established principle that the writ of mandate should not issue to or against an officer when he has not the means or authority to do the act required of him. (U. S. Dig., 1871, Title Mandamus, Secs. 19 and 20; *People* v. *Fogg,*

11 Cal. 351; *People* v. *Supervisors*, 15 Barb. 607; *People* v. *Supervisors of San Francisco et al.*, 27 Cal. 655.)

*McConnell & King*, for the Respondent.

Admitting it to have been the intention of the Legislature to abolish the fund created by the Act of 1870, such intention was, as respects existing demands upon that fund, so unconstitutional and *extra vires*, that the Acts of 1872, so far as they affect the fund in question, are null and void.

It will be observed that the sole provision made by the Act of 1870, for the payment of warrants, is the fund resulting from the collection of water rates. If they are not paid from that fund, they will not be paid at all; for if we should sue the city *in assumpsit* upon them, it would have, as a conclusive defense to our action, only to answer that a specific fund existed for their payment.

The contract of the city with the payees of the warrants was, not only that they should be paid, but that they should be paid in a certain way, and from a particular fund. The moment the warrants were drawn, they became a charge on that fund, and remained so until paid.

Any law which interferes with the fund so provided, or renders the payment of the warrants more difficult or precarious, must impair the obligation of contracts and be unconstitutional and void.

*A fortiori* is this true of an act which deprives an existing contract of all means of payment, as do the Acts of 1872, when construed as counsel for respondent maintains they should be. (Vid. Sec. 10, Art. 1 U. S. Const.; *Fletcher* v. *Peck*, 6 Cranch. 87; *State of New Jersey* v. *Wilson*, 7 Cranch. 164; Dartmouth College case, 4 Wheaton, 518; *Green* v. *Biddle*, 8 Wheaton, 1; 1 Kent, Secs. 413 to 420 inclusive; Cooley, Const. Lim., Sec. 274 *et seq.*; Dillon's Municipal Corporations, p. (side page) 32, 34, 35; 41, 44, note.)

By the Court, Wallace, C. J. :

The judgment in this cause must be reversed. The warrants in question were drawn upon the "Water Fund," as

provided for by the Act of April 2, 1870. When they were presented they were not paid—there being no moneys in that fund. In this condition of affairs, the Act of April 2, 1870, was repealed, and the control of the water ditches vested in the municipal authorities, and the "Water Fund," which had heretofore been made up of water rates collected under the fifteenth section of the Act of April 2, 1870, was thereafter to be supplied not only by such rates but by the taxation which (under the fourth section of the Act of February 20, 1872), the municipal authorities were permitted to impose. The "water fund," therefore, upon which the warrants were drawn, is not the "water fund" as now existing in the treasury. Besides, it was not, under any view, the duty of the Treasurer to pay the warrants until they had first been audited and approved by the Common Council, under the provisions of the seventh section of the ordinance which is set forth in the agreed statement of facts.

Judgment reversed and cause remanded. Remittitur forthwith.

Mr. Justice NILES did not express an opinion.